UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Humphreys and Alston
Argued at Lexington, Virginia

ADRIAN SAUNDERS

                                         MEMORANDUM OPINION[*] BY
v.     Record No. 1639-15-3          CHIEF JUDGE GLEN A. HUFF
                                           NOVEMBER 8, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

Jason S. Eisner for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Adrian Saunders ("appellant") appeals his felony conviction of perjury, in violation of

Code § 18.2-434.  Following a bench trial in the Circuit Court of Pittsylvania County ("trial

court"), appellant was sentenced to five years of incarceration with all but six months suspended.

On appeal, appellant presents the following assignments of error:

> 1.  The trial court erred in finding [appellant] guilty of perjury
>     because the alleged false statement was not material.
>
> 2.  The trial court erred in finding [appellant] guilty of perjury
>     because the Commonwealth presented the uncorroborated
>     testimony of only one witness.

For the following reasons, this Court affirms appellant's conviction.

I.  BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial."

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

On May 21, 2012, appellant stood trial for felony eluding a police officer and driving a motor vehicle with a suspended license. The Commonwealth called only one witness, Investigator R.V. Worsham ("Worsham") of the Pittsylvania County Sheriff's Office. Worsham's testimony established that, while on duty in Pittsylvania County, he observed a white Honda pull up beside him and make a U-turn between six and eight feet away from him. Worsham made eye contact with and recognized the Honda's driver as appellant. Worsham had known appellant for over a decade—since before he became a law enforcement officer—and always knew appellant as "Antonio Saunders." Worsham described appellant as "one of the persons I've dealt with in my career that I have just dealt with over and over and over, and on top of it knowing him before." Every time Worsham had charged appellant in the past, he did so "under Antonio, no middle name, Saunders," which Worsham testified was "the only thing I've known him by." Worsham testified that he had "never heard him called Adrian."

After the Commonwealth rested, appellant testified under oath in his own defense. The following exchange between appellant's counsel and appellant occurred at the beginning of direct examination:

> Q. Tell the Judge your name.
> A. Adrian Saunders.
> Q. Are you also called Antonio Saunders?
> A. No, sir.
> Q. What's your middle name?
> A. I don't have one.
> Q. You're not Adrian Antonio Saunders?
> A. No, sir.
> Q. And you're not Antonio Saunders?

- 2 -

A. No.
Q. You're just Adrian with no middle initial?
A. Correct.

Appellant testified that he had "dealt with [Worsham] before" and conceded that he had been convicted of all the other charges initially brought by Worsham under the name "Antonio Saunders." Appellant further testified that those charges "[s]hould have been" brought under the name "Adrian Saunders." At closing argument, appellant contended that the uncertainty about appellant's name suggested that he could not have been the driver Worsham saw: "If there's confusion as to the name why would there not be a, a reasonable hypothesis of innocence as to confusion of the person[?]" The trial court convicted appellant of both charges, specifically noting that it did not "have any questions about [Worsham's] ability to observe and his knowledge of the defendant."

Based on his testimony at the May 21, 2012 trial, appellant was charged with perjury. At appellant's perjury trial on June 11, 2014, the Commonwealth introduced into evidence a transcript of the May 21, 2012 trial and several court documents from proceedings involving appellant. Specifically, these documents included a capias and conviction for failure to appear against "Antonio Saunders" dated August 23, 2002 and executed by Worsham; a waiver of right to representation dated December 31, 2002 and signed by "Antonio Saunders"; an arrest warrant and conviction for eluding against "Antonio Saunders" sworn by Worsham and dated March 14, 2006; a request for appointment of a lawyer dated May 5, 2006 and signed by "Antonio Saunders"; an arrest warrant and conviction for driving with a suspended license against "Antonio Saunders" sworn by Worsham and dated March 14, 2006; and a second request for appointment of a lawyer dated May 5, 2006 and signed by "Antonio Saunders."

The Commonwealth also called Worsham, who testified that he had known appellant since the mid-1990s and that after he became a police officer, he continued to come into contact

- 3 -

with appellant. Worsham testified that he knew appellant as "Antonio, no middle name, Saunders" and that he never knew appellant as "Adrian Saunders."

Appellant moved to strike the Commonwealth's evidence, arguing at closing that the Commonwealth failed to establish that appellant's perjured statements were material and did not sufficiently corroborate Worsham's testimony. The trial court denied appellant's motion to strike, finding that the statements were material and that other evidence sufficiently corroborated Worsham's testimony. This appeal followed.

## II. STANDARD OF REVIEW

Our standard for reviewing the sufficiency of the evidence is firmly established:

> [W]hen the sufficiency of the evidence is challenged on appeal, the evidence and all reasonable inferences fairly drawn therefrom must be viewed in the light most favorable to the Commonwealth. The trial court's judgment should be affirmed unless it appears that it is plainly wrong or without evidence to support it.

Spencer v. Commonwealth, 238 Va. 275, 283, 384 S.E.2d 775, 779 (1989) (citations omitted). Under this familiar standard of review, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. Thus, this standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

## III. ANALYSIS

On appeal, appellant contends that the trial court erred in finding the evidence was sufficient to convict him of perjury in violation of Code § 18.2-434. Specifically, appellant

asserts that the Commonwealth did not produce sufficient evidence to establish that the perjured statements were material and that the Commonwealth failed to corroborate Worsham's testimony. Both arguments are without merit.

A. Materiality

"The common law crime of perjury is codified at Code § 18.2-434." Williams v. Commonwealth, 8 Va. App. 336, 339, 381 S.E.2d 361, 364 (1989). Code § 18.2-434 provides in pertinent part: "If any person to whom an oath is lawfully administered on any occasion willfully swears falsely on such occasion touching any material matter or thing . . . he is guilty of perjury, punishable as a Class 5 felony." "[I]n order to sustain a perjury conviction under this statute, the Commonwealth ha[s] the burden of proving: (1) that an oath was lawfully administered; (2) that the defendant wil[l]fully swore falsely; and (3) that the facts to which he falsely swore were *material to a proper matter of inquiry*." Mendez v. Commonwealth, 220 Va. 97, 102, 255 S.E.2d 533, 535 (1979) (emphasis added).

In the perjury context, materiality "means that the statement must be one about a fact that could influence the outcome of the proceeding." Ronald J. Bacigal, 7 Virginia Practice: Criminal Offenses and Defenses 480 (2016). In this sense, materiality is the functional equivalent of relevancy. See Sheard v. Commonwealth, 12 Va. App. 227, 232, 403 S.E.2d 178, 180 (1991) ("Testimony is material if it is relevant to a main or collateral issue on trial."); see also Carpitcher v. Commonwealth, 273 Va. 335, 344, 641 S.E.2d 486, 494 (2007) (distinguishing the meaning of "material" in terms of relevancy as used in the perjury context from its use in other areas of law). Evidence is relevant, and thus material, "if it has any logical tendency, however slight, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993). But if the untrue representation did not "touch[] any material matter or thing" at trial, Code § 18.2-434, then "the mere falsity of the statement alone

will not sustain a perjury conviction," Holz v. Commonwealth, 220 Va. 876, 881, 263 S.E.2d 426, 429 (1980).

Appellant's name was a material issue in the case at bar insofar as it related to the identity of the Honda's driver and the trial court's assessment of the witnesses' credibility. Turning first to the issue of identity, appellant asserts that "[t]he fact that [appellant] may have used a different first name in the past has no bearing of any nature on . . . whether [appellant] was driving" the vehicle in question.[1]  Appellant's argument is that the specific name by which appellant is known is irrelevant to determining whether appellant actually was the individual driving the Honda.  At oral argument, however, counsel for appellant conceded that "identity is the unspoken element of every crime."  Further, during the May 21, 2012 trial, counsel for appellant directly conflated the uncertainty as to appellant's name with the issue of who drove the car in question by arguing:  "If there's confusion as to the name why would there not be a, a reasonable hypothesis of innocence as to confusion of the person[?]"  This argument is sufficient to establish that appellant's name was a "main or collateral issue on trial," Sheard, 12 Va. App. at 232, 403 S.E.2d at 180, and that appellant's statements regarding his name had "a logical tendency, however slight, to establish a fact at issue in the case," Ragland, 16 Va. App. at 918, 434 S.E.2d at 678.

_____

[1] Appellant also argues on brief that "the issue of prior names [appellant] may have used was not relevant to any of the elements of the applicable statutes," but Virginia perjury law does not measure materiality with respect solely to elements of an offense.  Instead, "testimony is material if it is relevant to a main *or collateral issue* on trial."  Sheard, 12 Va. App. at 232, 403 S.E.2d at 180 (emphasis added).  Because elements of an offense can hardly be considered collateral issues, the class of material issues in the perjury context comprises a category broader than a crime's essential elements.

Further, witness credibility was a fundamental issue in the May 21, 2012 trial. The issue before the trial court was whether appellant was the person driving the Honda that eluded Worsham. Worsham testified that he recognized appellant as the driver; appellant's defense was that he was not the driver. The degree to which the trial court believed one witness over the other was material to the trial court's finding of appellant's guilt or innocence. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998); see Ganzie v. Commonwealth, 24 Va. App. 422, 429-30, 482 S.E.2d 863, 867 (1997) (holding that a witness' false testimony about prior statements was material to jury's determination of that witness' credibility). Appellant's testimony that he never used the name "Antonio," if believed, would cause the trial court to question Worsham's testimony, the only evidence presented by the Commonwealth in the May 21, 2012 trial. Thus, because witness credibility was at issue in that case, and appellant's testimony affected the trial court's determination of that issue, appellant's testimony was material within the meaning of Code § 18.2-434.

### B. Corroboration

Appellant next asserts that the Commonwealth did not sufficiently corroborate Worsham's testimony in violation of the "two-witness rule." This argument also fails.

"While the Code has never expressly required corroboration to sustain a perjury conviction, from an early date, our courts have imposed a corroboration requirement." Keffer v. Commonwealth, 12 Va. App. 545, 547, 404 S.E.2d 745, 746 (1991). Commonly known as the "two-witness rule," there are two ways to satisfy the corroboration requirement in a perjury trial: "there must be two witnesses testifying to the falsity of the statement, *or* one witness with strong corroborating circumstances of such a character as clearly to turn the scale and overcome the

oath of the party and the legal presumption of his innocence." Schwartz v. Commonwealth, 68 Va. (27 Gratt.) 1025, 1027 (1876) (emphasis added). The "well nigh universal" corroboration requirement thus serves as a safeguard to ensure that "the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused." Hammer v. United States, 271 U.S. 620, 628 (1926). Because "it is unsafe to convict in any case where the oath of one man merely is to be weighed against that of another," the confirmatory evidence used to support the single witness' testimony "must be of a strong character, and not merely corroborative in slight particulars." Schwartz, 68 Va. (27 Gratt.) at 1027.

Although the exact nature of the corroborating evidence "has never been specifically delineated," this Court has held that "it need not be equal in weight to the testimony of a second witness." Stewart v. Commonwealth, 22 Va. App. 117, 120, 468 S.E.2d 126, 127 (1996). Instead, "the corroborating evidence must confirm the single witness' testimony in a manner strong enough 'to turn the scale and overcome the oath of the [defendant] and the legal presumption of his innocence.'" Id. (quoting Keffer, 12 Va. App. at 548, 404 S.E.2d at 746-47).

Previous Virginia decisions provide some guidance as to what constitutes sufficient corroborating evidence under the Schwartz rule. In Holz, the Supreme Court held that the evidence was sufficient to convict Holz of perjury for his testimony denying that he knew of an order suspending his driver's license. 220 Va. at 879, 263 S.E.2d at 428-29. The Commonwealth's evidence consisted of a Division of Motor Vehicles ("DMV") officer's testimony and various DMV records, which included a copy of the suspending order and a form on which Holz acknowledged in writing that the order had been served on him and that he understood his driving privilege had been suspended. Id. at 878, 263 S.E.2d at 427. Although the Court did not make specific reference to the corroboration requirement, it held that the DMV records and DMV officer's testimony together were sufficient evidence to affirm the perjury

conviction. Id. at 882, 263 S.E.2d at 429. This conclusion implies that the Schwartz corroboration requirement was met. Id.; see also Keffer, 12 Va. App. at 548-49, 404 S.E.2d at 747 ("In Holz, corroborating evidence in fact supported the DMV officer's testimony.").

Likewise, in Fritter v. Commonwealth, 45 Va. App. 345, 610 S.E.2 887 (2005), Fritter was convicted of perjury based on his testimony as a witness in another defendant's criminal trial denying that he had seen a letter addressed to him. Id. at 350-51, 610 S.E.2d at 889-90. At Fritter's perjury trial, the Commonwealth's evidence included a detective's testimony that Fritter personally gave the detective the letter, testimony from the original criminal trial where the defendant in that trial stated that he sent the letter to Fritter, and the letter itself. Id. at 355, 610 S.E.2d at 892. This Court held that the letter, which was addressed to Fritter's first name and contained references that only he and the original criminal defendant would understand, taken together with the original defendant's testimony, was sufficient to satisfy the corroboration requirement under Schwartz.[2] Id.

Nevertheless, appellant relies on Donati v. Commonwealth, 37 Va. App. 575, 560 S.E.2d 455 (2002), for the proposition that only "competent, authenticated, real evidence" such as a photograph or videotape is sufficient to corroborate a single witness' testimony under Schwartz. In Donati, however, this Court held that the Schwartz rule was inapplicable because that case "did not involve weighing of competing oaths and [was] not supported by the testimony of only one witness." Id. at 578, 560 S.E.2d at 456. There, the Commonwealth did not present a witness who testified that the defendant had lied under oath, but instead offered only a videotape and

---

[2] Appellant argues that the Fritter holding with respect to the letter was mere dicta because there were two witnesses: the detective and the original defendant. Only the detective, however, testified at Fritter's perjury trial that Fritter had seen the letter before, and it is the perjury trial testimony with which the Schwartz corroboration requirement is concerned. Therefore, the Fritter Court's decision that the letter taken together with the original defendant's statements at the prior trial were sufficient to corroborate the detective's testimony was not dicta.

photographs derived from that videotape against which the jury weighed the defendant's testimony. Id. at 577, 560 S.E.2d at 455-56. Although this Court held that a properly authenticated photograph or videotape may be admitted as a "silent witness" that "speaks for itself" to prove perjury, it did not technically hold that videotapes and photographs were adequate to *corroborate* witness testimony because, in that case, there was no testifying witness to corroborate. Id. at 579, 560 S.E.2d at 457. Instead, the Donati Court held that, *standing alone*, a videotape or photograph can be sufficient to support a perjury conviction. Id.

In the case at bar, the totality of the Commonwealth's evidence at appellant's perjury trial consisted of Worsham's testimony, the transcript of appellant's May 21, 2012 trial, and various court documents. Appellant contends that the transcript and documents were insufficient to corroborate Worsham's testimony under Schwartz because the transcript "served only to confirm that [appellant] made the allegedly false statement" and the "prior charging documents and convictions represent nothing more than the actions taken by Officer Worsham while under the belief that [appellant's] first name was Antonio." This view of the evidence, however, is unduly narrow.

Appellant's concern regarding the court documents echoes this Court's caution that "corroborative evidence must be 'evidence that does not emanate from the [single witness'] mouth, does not rest wholly upon the [single witness'] credibility, but . . . adds to, strengthens, and confirms [that witness'] testimony.'" Cossitt-Manica v. Commonwealth, 65 Va. App. 394, 404, 778 S.E.2d 513, 518 (2015) (alteration in original) (quoting Massey v. Commonwealth, 230 Va. 436, 443, 337 S.E.2d 754, 758 (1985)). It is true that the two arrest warrants dated March 14, 2006 were both issued against "Antonio Saunders" based on Worsham's sworn statements. Thus, insofar as the warrants are made out against an "Antonio Saunders," their corroborative value is inconsequential because they rest wholly upon Worsham's belief that appellant's name

- 10 -

was "Antonio Saunders." Notwithstanding the information entered on the warrants, the person on whom they were served signed both warrants as "Antonio Saunders." Further, the request for appointment of a lawyer forms for these charges are also signed "Antonio Saunders." These forms were generated by the trial court and cannot reasonably be said to have "emanate[d] from [Worsham's] mouth." Id. (quoting Massey, 230 Va. at 443, 337 S.E.2d at 758).

Even if this Court were to find that the signatures on the arrest warrants and request for appointment of a lawyer form were so tainted by Worsham's involvement in obtaining the original warrants as to have no corroborative value, the remaining evidence offered by the Commonwealth is sufficient to affirm appellant's conviction. The capias for failure to appear dated August 23, 2002 was issued by the Danville General District Court, not by a magistrate based on Worsham's sworn statements. Although it is true that Worsham was also connected with the capias, his only involvement was as the arresting officer who executed the capias—a role in which his belief about appellant's name, regardless of its accuracy, was irrelevant. Although it did not contain a signature line for the party served, the capias named "Antonio Saunders" as the respondent to be arrested. In addition, the waiver of right to representation form, accompanying the capias, is signed "Antonio Saunders."

Finally, the transcript of the May 21, 2012 trial contains appellant's admission that he was the person against whom the aforementioned warrants and capias were issued. After the Commonwealth's attorney asked appellant, "so all Danville charges, they were always under, your testimony today is Adrian Saunders?," appellant responded, "Should have been, yes, sir." Testimony from an underlying trial witness other than that of the Commonwealth's sole witness at a perjury trial is permissible corroborative evidence in that perjury trial. See Fritter, 45 Va. App. at 355, 610 S.E.2d at 892 (holding that a witness' testimony from a prior criminal trial was admissible as corroborative evidence in Fritter's perjury trial). Thus, appellant's statement

- 11 -

during the May 21, 2012 trial that the Danville charges "should have been" brought against him under the name "Adrian Saunders" rather than "Antonio Saunders" establishes both that appellant was in fact the subject of the warrants and capias and that he was the person who signed the waiver of the right to representation and the request for appointment of a lawyer forms as "Antonio Saunders."

The court documents and transcript from the May 21, 2012 trial fulfill a corroborative purpose similar to the DMV records in Holz and the letter and prior testimony in Fritter. The court documents, of which appellant acknowledged he is the subject, are "not merely corroborative in slight particulars." Schwartz, 68 Va. (27 Gratt.) at 1027. Instead, they are "strong corroborating circumstances of such a character as clearly to turn the scale and overcome the oath of [appellant] and the legal presumption of his innocence." Id. The Commonwealth therefore presented evidence that a rational trier of fact could find sufficient to corroborate Worsham's testimony.

## IV. CONCLUSION

Because the trial court had sufficient evidence properly before it to establish the materiality of appellant's testimony and to corroborate Worsham's testimony under the Schwartz rule, its decision to convict appellant was not plainly wrong or without evidence to support it. Accordingly, this Court affirms the judgment of the trial court and appellant's conviction.

Affirmed.